OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Carver, Appellee and Cross-Appellant, v.
Hull, Sheriff, et al., Appellants and Cross-Appellees.
[Cite as State ex rel. Carver v. Hull (1994),        Ohio
St.3d        .]
Mandamus to compel reinstatement as a cook/substitute matron in
     Scioto County Sheriff's Department and back pay with
     interest -- Writ granted, when.
     (No. 93-1514 -- Submitted July 27, 1994 -- Decided October
19, 1994.
     Appeal and Cross-Appeal from the Court of Appeals for
Scioto County, No. 90CA1907.
     Pauline Carver, appellee and cross-appellant, sought a
writ of mandamus in the Scioto County Court of Appeals to
compel (1) her reinstatement as a cook/substitute matron for
appellant and cross-appellee Scioto County Sheriff's
Department, and (2) back pay with interest.  Carver's
reinstatement had previously been ordered by the State
Personnel Board of Review ("SPBR") on the ground that appellant
and cross-appellee Sheriff John Hull of the department had
denied her right as a classified employee to reinstatement upon
recall from layoff.  Carver sued in mandamus when Hull did not
comply with the SPBR order.
     Carver worked for the sheriff's office part-time as a cook
during the summers of 1983 and 1984.  In January 1985, Hull
hired her as a full-time cook/substitute matron, but she was
laid off due to lack of funds on April 28, 1985.  Carver did
not appeal at that time to SPBR; however, she later asked Hull
about being recalled to her job.  In December 1985, Carver
learned that another woman, Geneva Cantrell, had been working
part-time as a cook/substitute matron for the sheriff's
office.  In March or April 1986, Carver discovered that
Cantrell had been hired for full-time work.
     Carver appealed to SPBR on April 14, 1986.  Hull moved to
dismiss based on untimeliness, arguing that Ohio Adm.Code
124-1-03(B) required her to appeal within ten days after notice
of the layoff.  SPBR granted the motion to dismiss.  Carver
requested reconsideration on the ground that she was contesting
the loss of her recall rights, which were not violated until

months after her layoff.  SPBR reconsidered, stating:

"The appeal is hereby REMANDED to the Administrative Law Judge for further proceedings, to be treated as an investigation of [Carver's] recall rights."1

An administrative law judge ("ALJ") found that Hull violated Carver's right to recall under R.C. 124.327(B) (recall from layoff list for one year after layoff).  With respect to the timeliness of her appeal, the ALJ said:

"* * * [Carver] has failed to file a timely appeal to question the validity of a lack of funds layoff which took place in April, 1985.  However, for purposes of her recall rights, * * * [Carver] has filed a timely appeal pursuant to Ohio Revised Code Section 124.56 and our administrative rule, Ohio Administrative Code 124-1-03. * * *"

On October 7, 1986, SPBR adopted the ALJ's report and ordered Carver's reinstatement.  SPBR also accepted the ALJ's invocation of the authority conferred by R.C. 124.56, which allows SPBR to investigate officials who may be abusing their powers of appointment, layoff, reduction, suspension or removal and to recommend such official's removal to the Governor, mayor or other chief appointing authority, or board of township trustees, as applicable.  The last sentence of SPBR's order reads:

"If [Carver] is not returned to her previous employment within thirty (30) days of the issuance of this order this matter will be reported to the Governor with its recommendation that Sheriff Hull be removed for violations of Chapter 124. of the Ohio Revised Code."

Hull appealed, but the Franklin County Common Pleas Court granted SPBR's motion to dismiss.  The common pleas court concluded that no mechanism existed for challenging the results of an investigation under R.C. 124.56.  Its order, dated January 29, 1988, states:

"* * * This Court finds that the instant appeal is not a justiciable question before the Court.  See Singh v. State (1982), 7 Ohio App.3d 269 [7 OBR 349, 455 N.E.2d 522].  For this reason this Court does not reach any of the substantive issues raised by [Hull].  This Court lacks subject matter jurisdiction and therefore, must SUSTAIN appellees' motion to dismiss."

Hull did not appeal the dismissal of his appeal, which left the SPBR order intact.  However, he also did not immediately reemploy Carver, and SPBR recommended his removal to the Governor, who took no action.  Carver waited until November 22, 1989 to file her complaint in mandamus.  She was apparently recalled to work on January 4, 1993, during the court of appeals' review.

The court of appeals granted the writ of mandamus, including an award of back pay in the amount of $117,838.12, with interest and costs.  It agreed with SPBR that Carver was entitled to recall and that Hull had a duty to comply with R.C. 124.327(B).  The court rejected Hull's argument that Carver had an adequate remedy via SPBR's recommendation for his removal, holding that the sheriff's removal was not the relief Carver requested.  The court also rejected the other arguments Hull now raises on appeal -- that Carver lacks standing and that laches precludes a writ of mandamus.

Hull appeals as of right. Carver cross-appeals the court of appeals' denial of prejudgment interest. She also moves to strike Hull's brief and to dismiss this appeal for his failure to comply with briefing provisions of the Supreme Court Rules of Practice.

Miller, Dye, Huddleston & Knapp and C. Lawrence Huddleston, for appellee and cross-appellant.

Lynn Alan Grimshaw, Scioto County Prosecuting Attorney, and William K. Shaw, Jr., Assistant Prosecuting Attorney, for appellants and cross-appellees.

Per Curiam. This cause presents six questions for our review. First, should the motion to strike and for dismissal be granted? Second, does Carver have standing to maintain this action? Third, does Hull owe Carver reinstatement, or did SPBR abuse its discretion in finding a violation of Carver's recall rights? Fourth, does Carver have an adequate remedy in the ordinary course of law? Fifth, should mandamus be denied due to laches? Sixth, did the court of appeals err in denying prejudgment interest?

For the reasons that follow, we overrule Carver's procedural motion and find that she has standing. With respect to the merits, we find that SPBR exceeded its authority in determining Carver's right to recall under R.C. 124.56; however, we also find that she is entitled to reinstatement due to Hull's undisputed failure to comply with R.C. 124.327. We further find that an appeal to SPBR was not available to Carver, and that the sheriff's removal is an inadequate remedy. Finally, we find that her delay did not cause prejudice, but that she is not entitled to prejudgment interest. Accordingly, we affirm.

### Motion to Strike and for Dismissal

Carver urges us to strike Hull's brief and to dismiss his appeal because (1) he did not file the record required by former S.Ct.Prac.R. IV(1), (2) he did not file his merit brief within the time prescribed by former S.Ct.Prac.R. V(1), which depended on when the record was filed, or (3) he did not include in his brief an appendix containing (a) copies of all judgments, orders, and decisions rendered by the court of appeals, (b) copies of any cited administrative rules, or (c) copies of any cited constitutional provisions, as required by former S.Ct.Prac.R. V(1)(E)(d), (f), and (g).

The prosecution of this appeal suffers from all the infirmities Carver cites. However, Hull's noncompliance with our former rules is not so pervasive that we are required to dismiss, see Drake v. Bucher (1966), 5 Ohio St.2d 37, 38, 34 O.O.2d 53, 54, 213 N.E.2d 182, 183 (appeal dismissed where party "utterly fail[ed] to comply with virtually every rule of this court as to form or content" in writing brief), and we generally prefer substantive dispositions to procedural. The motion to strike and for dismissal, therefore, is overruled.

### Standing

In his second proposition of law, Hull asserts Carver's lack of standing and relies, as the common pleas court did in dismissing his appeal, on Singh v. State (1982), 7 Ohio App.3d 269, 7 OBR 349, 455 N.E.2d 522. Singh held that an employee

lacked standing to appeal the results of an R.C. 124.56 investigation.  Id. at 270, 7 OBR at 351, 455 N.E.2d at 524.

Singh aside, Carver's standing to sue in mandamus is not determined by any purported lack of standing in the underlying SPBR appeal.  That case ended without the SPBR's reinstatement order having been reversed on appeal.  Thus, Carver may now sue for compliance with the order, and her personal stake in enforcement manifests "the requisite concrete adverseness" necessary for standing.  Ohio Hosp. Assn. v. Community Mut. Ins. Co. (1987), 31 Ohio St.3d 215, 218, 31 OBR 411, 413, 509 N.E.2d 1263, 1266, citing Baker v. Carr (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678.

Similarly, Carver has the "beneficial interest" required by R.C. 2731.02 because she demands that Hull observe her individual right to recall under R.C. 124.327.  Her interest is thus "different from and transcend[s] that of the citizenry generally," State ex rel. Harris v. Silbert (1959), 169 Ohio St. 261, 265, 8 O.O.2d 278, 280, 159 N.E.2d 439, 442, which constitutes sufficient standing to maintain an action in mandamus to compel compliance with a statute.  State ex rel. Zoller v. Talbert (1980), 62 Ohio St.2d 329, 330, 16 O.O.3d 391, 405 N.E.2d 724, 725.

Duty to Reinstate and Adequate Remedy

For a writ of mandamus to issue, the court must find that Carver has a clear legal right to Hull's performance of a clear legal duty and that she had no adequate remedy in the ordinary course of law.  State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 631 N.E.2d 150.

In his first, third, and fourth propositions of law, Hull maintains that SPBR abused its discretion and acted beyond its authority by determining Carver's right to recall under the aegis of R.C. 124.56.  Hull claims the statute provides only one form of relief -- a recommendation for the removal of an official or other appointing authority.2

SPBR abused its discretion if its order is "'contrary to law, or * * * there is no evidence to support its decision.'" State ex rel. Bispeck v. Bd. of Commrs. of Trumbull Cty. (1988), 37 Ohio St.3d 26, 27, 523 N.E.2d 502, 504.

R.C. 124.56 states:

"When the state personnel board of review * * * has reason to believe that any officer, * * * head of a department, or person having the power of appointment, layoff, suspension, or removal, has abused such power by making an appointment, layoff, reduction, suspension, or removal of an employee under his or their jurisdiction in violation of this chapter of the Revised Code, the board or commission shall make an investigation, and if it finds that a violation of this chapter, or the intent and spirit of this chapter has occurred, it shall make a report to the governor , * * who may remove forthwith such guilty officer, * * * head of department, or person.  The officer or employee shall first be given an opportunity to be publicly heard in person or by counsel in his own defense.  The action or removal by the governor * * * is final except as otherwise provided in this chapter of the Revised Code."

Singh, supra, contains support for Hull's argument. There, the Franklin County Court of Appeals said that R.C.

124.56 contains no provision for the rights of an employee insofar as an investigation for violation of R.C. Chapter 124 is concerned. The statute contemplates only an investigation of an appointing authority for abuses in employee appointments, layoffs, reductions, suspensions or removals. Thus, in addition to holding that an employee has no standing to appeal from an R.C. 124.56 investigation, the court determined that neither SPBR nor a common pleas court has subject-matter jurisdiction to hear such an appeal.

Similarly, in In re Appeal of Howard (1991), 73 Ohio App.3d 717, 720, 598 N.E.2d 165, 167, the Franklin County Court of Appeals said the investigation under R.C. 124.56 is "administrative rather than quasi-judicial in nature" and does not provide employees either a right to be heard or a right to appeal.

In Singh, however, SPBR dismissed an employee's appeal based on a failure to promote, and the common pleas court specifically dismissed his further appeal because R.C. 124.56 did not extend to denials of promotion. The court of appeals affirmed, agreeing that the employee had no standing because his "interests were not adjudicated." Id., 7 Ohio App.3d at 270, 7 OBR at 351, 455 N.E.2d at 524. This result implies another rationale for the Singh decision -- that SPBR can determine a violation of employee rights where job actions are within the scope of R.C. 124.56, i.e., in appointments, layoffs, reductions, suspensions, or removals. See Ketron v. Ohio Dept. of Transp. (1991), 61 Ohio App.3d 657, 573 N.E.2d 743, in which the Franklin County Court of Appeals followed Singh, but also based its decision on the absence of any reference to "promotions" in R.C. 124.56, and Riddle v. State Personnel Bd. of Review (1987), 41 Ohio App.3d 68, 534 N.E.2d 874, in which the same court seemed to conclude that SPBR can validly determine an employee's right to reinstatement where the contested job action is analogous to one for which jurisdiction exists under R.C. 124.56 and 124.03(A) (SPBR powers and duties).

Thus, Singh has been applied conservatively to mean that R.C. 124.56 provides an administrative investigation for abuse and no relief other than a recommendation of the offending official's removal. Cf. Leirer v. Parma (1989), 61 Ohio App.3d 54, 572 N.E.2d 152 (only official may appeal from R.C. 124.56 investigation, and then only after his removal is ordered), and Malone v. Ohio Dept. of Transp. (Apr. 15, 1986), Lawrence App. No. 1756, unreported (employee-termination appeal treated as R.C. 124.56 investigation, from which he had no appeal). However, Singh has also been interpreted to allow an adjudication of employee rights regarding appointment, layoff, reduction, suspension, or removal during an R.C. 124.56 investigation.

We find legislative intent is best served by the conservative approach. Again, R.C. 124.56 provides for a general finding of official abuse and a recommendation for removal. It says nothing about an adjudication of individual employee rights, much less an employee appeal. Moreover, Ohio Adm.Code 124-1-03(F) affords at least six months for instituting R.C. 124.56 investigations, a considerably longer period than is ordinarily allowed for appealing appointments,

layoffs, suspensions, removals, or reductions in pay or position.  See R.C. 124.33 and Ohio Adm.Code 124-1-03(D) (appeal ten days after notice of transfer), R.C. 124.328 and Ohio Adm.Code 124-1-03(B) (appeal ten days after layoff), R.C. 124.34 and Ohio Adm.Code 124-1-03(A) and (E) (appeal ten days after appropriate order of removal, suspension, or reduction, or ninety days after actual notice of reduction accomplished without appropriate order).  The six-month appeal period for R.C. 124.56 investigations also exceeds the "catch-all" period in Ohio Adm.Code 124-1-03(G), which allows thirty days after actual notice for appealing "all other actions."  These time limits become a matter of SPBR's discretion to apply, within the limits of Ohio Adm.Code 124-1-03(F), if R.C. 124.56 permits a determination of individual employee rights.  Accord Holt v. State (Jan. 15, 1985), Franklin App. No. 84AP-663, unreported.

In defense of SPBR's order for her reinstatement, Carver accuses Hull of limiting the focus of SPBR's authority under R.C. 124.56 to pure investigation, when her appeal also invoked SPBR's jurisdiction under R.C. 124.03(A), which enables SPBR to affirm, disaffirm or modify "final decisions * * * relative to reduction in pay or position, job abolishments, layoff, suspension, discharge, assignment or reassignment to a new or different position classification, or * * * [refusal to perform a job audit]."  Carver submits that reinstatement after recall is an integral part of the layoff process and that recall rights are therefore implicitly within SPBR's jurisdiction over layoffs under R.C. 124.03(A) and 124.56.

"Layoff" is not defined in R.C. Chapter 124.  However, under Ohio Adm.Code 124-1-02(I), a "layoff" is "a suspension of employment, expected to last less than twelve months, due to either a lack of work or a lack of funds," and reinstatement after recall is not mentioned.  Moreover, a similar request to extend the reach of R.C. 124.03(A) has been rejected as judicial legislation.  In Ketron, supra, 61 Ohio App.3d at 661, 573 N.E.2d at 746, the court refused to confer SPBR jurisdiction over "promotions" by inserting that word into R.C. 124.03(A).  The court said that a legislative intent to prevent failure-to-promote appeals was evident from the omission of promotions in R.C. 124.03(A) and references to this job action elsewhere in R.C. Chapter 124.  The same rationale applies to appeals regarding a failure to reinstate after recall.  See State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections (1994),       Ohio St.3d    ,       N.E.2d      .

Accordingly, we adopt the rationale in Singh and hold that SPBR had no jurisdiction to order Carver's reinstatement pursuant to R.C. 124.56, and that much of its order is unenforceable.  State ex rel. Stough v. Bd. of Edn. (1977), 50 Ohio St.2d 47, 4 O.O.3d 116, 362 N.E.2d 266, overruled on other grounds, Ohio Assn. of Pub. School Emp. Chapter No. 471 v. Twinsburg (1988), 36 Ohio St.3d 180, 184, 522 N.E.2d 532, 536.  Almost conceding this, Carver alternatively argues that she was entitled to reinstatement because this record independently establishes that Hull violated R.C. 124.327(B).

The court of appeals had sufficient evidence before it to find a violation of Carver's recall rights and a duty to reinstate her -- the relevant facts underlying Carver's claim for reinstatement being admitted.  However, to be entitled to a

writ of mandamus without a valid SPBR order, Carver must also establish that she had no adequate remedy by way of an appeal to SPBR. State ex rel. Weiss v. Indus. Comm. (1992), 65 Ohio St.3d 470, 477, 605 N.E.2d 37, 42 (mandamus may not be substituted for a civil service appeal). Hull proposes in his fifth proposition of law that Carver should have appealed the SPBR order within ten days after receipt thereof pursuant to Ohio Adm.Code 124-1-03(B). That rule applies to layoffs, job abolishments, and displacements, or "bumping" rights, see State ex rel. Blinn v. Ohio Dept. of Adm. Serv. (1984), 21 Ohio App.3d 117, 118, 21 OBR 125, 126, 487 N.E.2d 343, 345; it does not apply to reinstatement after recall. The other remedy Hull suggests -- enforcement of the recommendation for his removal -- does not redress Carver's right to recall and, therefore, is inadequate. Thus, neither of these remedies precludes mandamus.

Based on the foregoing, SPBR abused its discretion in attempting to determine Carver's right to recall under the investigative authority conferred by R.C. 124.56, and its reinstatement order is void. However, Carver has shown her clear right to recall and Hull's clear duty to reinstate her. Moreover, because SPBR lacks jurisdiction to determine recall rights under R.C. 124.03(A), Carver had no adequate remedy via appeal and has satisfied the test for the issuance of a writ of mandamus.

### Laches

In his last proposition of law, Hull claims laches because Carver filed this mandamus action at least three years after she was replaced. He also assails Carver's delay in enforcing SPBR's reinstatement order.

Laches occurs when unreasonable and inexcusable delay in asserting a known right causes material prejudice. State ex rel. Cater v. N. Olmsted (1994), 69 Ohio St.3d 315, 325, 631 N.E.2d 1048, 1056. The question whether laches has barred a claim in mandamus rests in in the court's sound discretion. State ex rel. Moore v. Sanders (1981), 65 Ohio St.2d 72, 75, 19 O.O.3d 264, 266, 418 N.E.2d 1339, 1341.

Carver's appeal to SPBR occurred only a month or so after her discovery of Cantrell's full-time employment and, as the court of appeals concluded, the time required for review by SPBR and the common pleas court was not due to Carver's delay. Accord State ex rel. Case v. Indus. Comm. (1986), 28 Ohio St.3d 383, 386, 28 OBR 442, 445, 504 N.E.2d 30, 34. But, Carver waited from January 29, 1988, when Hull's SPBR appeal was dismissed, until November 22, 1989 to file a complaint in mandamus. While the court of appeals observed that "Carver * * * persistently tried to enforce her statutory right to recall," it did not explain what those efforts were during this period. Carver's excuse basically is her lack of sophistication.

In State ex rel. Smith v. Witter (1926), 114 Ohio St. 357, 151 N.E. 192, mandamus was denied to an employee who waited two years after a civil service commission determined that he was discharged unlawfully before seeking the writ to compel his reinstatement and back pay. The court, which suspected the employee had delayed to "tak[e] advantage of his own laches," said:

"A respondent often might be seriously prejudiced, if, after restoration, a relator should be permitted to use the

judgment of the court as a basis for his recovery of continued compensation over a long period of time, a plight which could be avoided by seasonably bringing his action."  Id. at 359, 151 N.E. at 192-193.

Smith does not apply here.  No evidence suggests that Carver delayed in order to be paid for not working.  However, Smith was followed by Moore, supra, which Hull cites as dispositive.

In Moore, a writ of mandamus was denied to a deputy sheriff who waited nearly two years before asserting a right to reinstatement in any forum.  By contrast, Carver did not delay in asserting her right to recall; she delayed in enforcing the administrative order for her reinstatement -- an order that, until voided by our decision today, was facially valid.  This distinction means that Hull knew Carver's claim had some validity, yet still withheld an offer of reinstatement to avoid the prejudice he now claims.

In Connin v. Bailey (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328, we refused to excuse thirty-five years of noncompliance with a court order for child support and alimony because "'[t]he mere inconvenience of having to meet an existing obligation imposed * * * by an order or judgment of a court of record at a time later than that specified in such * * * order cannot be called material prejudice.'"  Id. at 37, 15 OBR at 136, 472 N.E.2d at 330, quoting Smith v. Smith (1959), 168 Ohio St. 447, 457, 7 O.O.2d 276, 281, 156 N.E.2d 113, 120. A facially valid administrative order requires the same compliance and, absent affirmative evidence of deliberate delay in enforcing that order, cannot be ignored to the detriment of the prevailing party.  Thus, while Carver delayed in enforcing her right to reinstatement, we find that Hull has not shown the material prejudice necessary for this equitable defense.

Prejudgment Interest

A reinstated public employee may maintain an action in mandamus to recover compensation due for a period of wrongful exclusion from employment, provided the amount is established with certainty.  State ex rel. Martin v. Bexley Bd. of Edn. (1988), 39 Ohio St.3d 36, 37, 528 N.E.2d 1250, 1251; Monaghan v. Richley (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus.  Thus, having found that Hull had a duty to reinstate Carver and that she was entitled to this reinstatement, the court of appeals assigned a referee to determine whether Carver was also entitled to back pay.

The referee recommended, based primarily on stipulations, that Carver receive $117,838.12 in back pay.  Carver objected to the denial of prejudgment interest, arguing that interest accrued (1) as for a contractual obligation under R.C. 1343.03(A), or (2) as for a judgment under R.C. 1343.03(C). The court of appeals overruled her objections, explaining:

"The granting of prejudgment interest is a relative newcomer to the law, reflecting a greater economic awareness of the courts.  Often, as a case drags on, one party benefits by the delay because he obtains an economic advantage from the delay.  To offset that advantage, to prevent a party from benefitting from the contract, or to sanction unfjustified delay, prejudgment interest is sometimes allowed.  Without question, there was inordinate delay by [Hull] in this matter.

This case should have been resolved years ago, and to that extent [Carver] may have been harmed. However, during this entire period of delay, the clock kept ticking and each day of delay caused by [Hull's] failure to reinstate was also counted as a day of lost wages for [Carver]. We see no basis for prejudgment interest in this case under R.C. 1343.03(A) or under R.C. 1343.03(C)."

In her cross-appeal, Carver contends that prejudgment interest accrued on a bi-weekly basis beginning with Cantrell's first paycheck because the debt to Carver was then due and payable per R.C. 1343.03(A). Carver also claims that prejudgment interest accrued as of the date her cause of action arose because Hull made no good-faith settlement efforts per R.C. 1343.03(C). We agree with the court of appeals that neither subsection of the statute applies.3

Prejudgment interest did not accrue as a contractual matter under R.C. 1343.03(A) because Carver was entitled to her civil service position as a matter of law, not contract. Lewis v. Benson (1979), 60 Ohio St.2d 66, 67, 14 O.O.3d 269, 397 N.E.2d 396, 397. Furthermore, R.C. 1343.03(C) requires a showing that Hull "failed to make a good faith effort to settle," and that Carver "did not fail to make a good faith effort to settle the case." No evidence or argument suggests that either party ever offered to settle, which is generally required to show lack of good faith in such negotiations. Kalain v. Smith (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus.

                              Conclusion
Having found that Carver has a right to recall and Hull has duty to reinstate her, that she has no adequate remedy at law, that her delay in enforcing her right to recall did not prejudice Hull, that she is not entitled to prejudgment interest, and that she has standing, we affirm the court of appeals' judgment.

                         Judgment affirmed.
Moyer, C.J., A.W. Sweeney, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.
Douglas, J., concurs in judgment only.

FOOTNOTES
1    This order was not provided to the court of appeals, but the parties do not dispute its contents.
2    Hull's collateral attack on SPBR's order is permissible because he was unable to appeal directly. State ex rel. Ogan v. Teater (1978), 54 Ohio St.2d 235, 244, 8 O.O.3d 217, 222, 375 N.E.2d 1233, 1239.
3    Carver's authority does not specifically establish that a county can be held liable for interest on a judgment at all, much less for prejudgment interest. Either way, Hull apparently did not contest this award in the court of appeals, and he has not responded to the instant cross-appeal.